UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DOMINIQUE DAVIS et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 20-cv-2897 (APM) |
| UNITED STATES PAROLE COMMISSION et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.**

The United States Parole Commission ("Commission") must hold a "local revocation hearing" for any individual who has allegedly violated the terms of their parole or supervised release, "not later than 65 days from [their] retaking" on a supervised release or parole violation warrant. 28 C.F.R. § 2.215(f); *id.* § 2.102(f); D.C. Code § 24-403.01(b)(6)(A) (requiring that the Commission follow the procedures set forth in the now-repealed chapter 311 of title 18 of the U.S. Code); 18 U.S.C. § 4214(a)(1)(B). These hearings provide the individual the opportunity to contest their alleged parole or supervised-release violations. *See* Compl., ECF No. 1 [hereinafter Compl.], ¶ 2.

Plaintiffs Dominique Davis and Rodney Spriggs brought this action on behalf of a putative class of "all District of Columbia code offenders on parole or supervised release who have not received a local revocation hearing within 65 days of having been retaken on a warrant issued by the Parole Commission." Compl. ¶ 62. They claim that the Commission and its Acting Chair (collectively, "Defendants") have violated their statutory, regulatory, and constitutional

obligations to hold timely, in-person local revocation hearings during the COVID-19 pandemic, and they seek as relief a writ of mandamus. *Id.* ¶¶ 89–93; Pet. for Writ of Mandamus, ECF No. 2. Plaintiffs assert that remote local revocation hearings deprive them of their rights to be physically present for such hearings before a hearing examiner; to receive effective representation of counsel; and to present favorable evidence, including in-person testimony.

The court has not yet certified a class in this action: simultaneously with their motion for class certification, Plaintiffs filed a consent motion with Defendants to stay briefing on the motion for class certification. Consent Mot. to Extend Answer Deadline & to Stay Briefing on Mot. for Class Certification, ECF No. 8. Since then, there have been two developments that Defendants argue render this putative class action moot: first, both Plaintiffs have been released from the Commission's custody, and second, the Commission has updated its local revocation hearing procedures in ways that, it asserts, significantly "narrow the potential issues." Defs.' Mot. to Dismiss Pls.' Compl. & Deny Pls.' Pet. for Writ of Mandamus, ECF No. 16 [hereinafter Defs.' Mot.], Mem. in Supp. of Defs.' Mot., ECF No. 16-1 [hereinafter Defs.' Mem.], at 1. Specifically, the Commission has now fully resumed in-person revocation hearings—with the accused and their counsel physically present before a hearing examiner—with one exception: both adverse and friendly witnesses testify remotely, a requirement mandated by the D.C. Department of Corrections ("DOC"), which hosts the hearings. Based on these developments, Defendants have moved the court to dismiss the Complaint and deny the petition for mandamus on that basis[1]; that

---

[1] Defendants move to dismiss under both Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. Because the court finds that it does not have subject matter jurisdiction, it does not consider Defendants' merits arguments. *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (explaining that "federal courts lack jurisdiction to decide moot cases").

motion is now before the court. Defs.' Mot. For the reasons that follow, the court grants the motion to dismiss, without prejudice, on grounds of mootness.

## II.

When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharm., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). To that end, the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Mykonos v. United States*, 59 F. Supp. 3d 100, 103–04 (D.D.C. 2014) (applying rule in mootness context). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

Mootness is one ground for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017) ("A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction."). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (internal quotation marks omitted). "A case is moot

when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted). Stated differently, a case becomes moot when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Conservation Force*, 733 F.3d at 1204 (alteration and internal quotation marks omitted). "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies[.]" *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations and internal quotation marks omitted).

### III.

Defendants offer two independent arguments for mootness. First, they maintain that the entire action is moot because both Plaintiffs have been released, and so neither has a live claim with respect to an in-person revocation hearing. Defs.' Mem. at 10–11. Second, they assert that the Commission's return to in-person local revocation hearings narrows the live claims to only those involving remote witness testimony. *Id.*; Defs.' Mot., Mem., ECF No. 16-7 [hereinafter March 22 Memorandum]. Plaintiffs counter each argument with a different exception to mootness: the "inherently transitory" exception and the voluntary-cessation exception, respectively. Pls.' Opp'n to Defs.' Mot., ECF No. 17 [hereinafter Pls.' Opp'n], at 2. The court ultimately agrees with Defendants as to each theory of mootness and starts its discussion with Defendants' second argument (regarding the Commission's policy change).

## A.

After the filing of this suit, the Commission issued a memorandum on March 22, 2021 ("March 22 Memorandum") that "local revocation hearings are now to be held in person, with only the witnesses appearing via video conference." Defs.' Mem. at 11. According to Defendants, "[a]ll of Plaintiffs' claims challenging various aspects of fully-video conferenced local revocation hearings . . . are therefore moot," and all that remains as live claims are "those that challenge the use of video conference technology for witness testimony." *Id.* In response, Plaintiffs invoke the voluntary-cessation exception to mootness, Pls.' Opp'n at 2, under which "a defendant's voluntary choice to forgo the challenged conduct does not deprive the court of jurisdiction" unless "there is no reasonable expectation that the alleged violation will recur, and . . . interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Citizens for Responsibility and Ethics in Wash.* (*CREW*) *v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019) (internal quotation marks omitted). The party asserting mootness bears the "heavy" burden of "mak[ing] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur." *Id.* (emphasis omitted). Importantly, however, "there is less concern about the recurrence of objectionable behavior" "where the defendant is a government actor." *Id.*

Here, the Commission's policy change, made official through its March 22 Memorandum, suffices to carry Defendants' burden. The Commission has publicly announced its return to conducting local revocation hearings in person (with only witness testimony occurring remotely) and committed itself to not reverting to fully remote hearings. The March 22 Memorandum states that "it is the decision of the . . . Commission that all necessary parties to a local revocation hearing . . . will be required to attend the hearing in-person," and that "[t]he Commission will not revert to the use of video conference technology for the appearance of the above-defined necessary

5

parties." March 22 Memorandum. A "presumption of regularity" attaches "when government officials express a clear intention to do as the complaint requests"; absent evidence to the contrary, the court assumes the Commission's good faith in announcing the policy changes set forth in the March 22 Memorandum. *People for the Ethical Treatment of Animals* (*PETA*) *v. USDA*, 918 F.3d 151, 158–59 (D.C. Cir. 2019); *see also Worth v. Jackson*, 451 F.3d 854, 861 (D.C. Cir. 2006); *CREW*, 352 F. Supp. 3d at 14 (concluding that the agency's affirmation "that it intends to maintain the portion of the policy that was revised to address the Complaint[] . . . is sufficient to carry [the] [d]efendant's burden").

Plaintiffs attempt to undercut Defendants' showing, casting the March 22 Memorandum as mere "litigation posturing and gamesmanship." Pls.' Opp'n at 2. They point to the broader circumstances of the Commission's policy change: The Commission first issued a memorandum on March 4, 2021, which stated that the Commission would resume in-person hearings unless the DOC deemed it unsafe to do so at its facility. Defs.' Mot., Mem., ECF No. 16-6. Plaintiffs' counsel expressed to the Commission "that the voluntary cessation doctrine precluded a finding of mootness" based on "the March 4 memorandum's caveat that DOC could forbid hearings." Pls.' Opp'n at 9. The Commission then omitted that caveat in the March 22 Memorandum. Plaintiffs assert that there is "no persuasive reason why" the Commission would have changed course on this issue "[e]xcept to avoid the voluntary cessation doctrine." *Id.* The court does not find this characterization persuasive. Whether the Commission includes or omits its caveat regarding DOC makes no difference in terms of its actual policy or the likelihood of a return to remote hearings; the Commission never suggested otherwise. Neither party disputes the DOC's authority to halt in-person hearings at its facility. *See* Defs.' Reply at 7; Pls.' Opp'n at 8. And the DOC's decision not to allow in-person hearings in its space is not dispositive of the Commission's ability to carry

out its commitment to holding in-person hearings. *See* Defs.' Reply at 7 ("If DOC were to halt in-person local revocation hearings for public health reasons, the Commission would find alternative avenues of fulfilling its duties without resorting to fully video-conferenced hearings.").

Plaintiffs also argue that the March 22 Memorandum is inadequate because it lacks the requisite formality to avoid application of the voluntary-cessation exception. Pls.' Opp'n at 9. Defendants must "*formally* announce[] changes to official government policy," Plaintiffs assert, and "the Acting Chairman's memoranda are not changes at all because they are legally meaningless." *Id.* (internal quotation marks omitted). That is, Plaintiffs argue that because the March 2022 Memorandum was not subjected to a majority vote and notice-and-comment rulemaking procedures, the policy it announced is not legally binding and is therefore inadequate for voluntary-cessation purposes. *See id.* But this argument is perplexing. The status quo before COVID-19, and before the Commission began offering only remote local revocation hearings, was in-person hearings. As far as the court is aware, the Commission never underwent formal rulemaking to change that status quo when it began offering virtual hearings. It is not clear to the court why notice-and-comment rulemaking would be necessary to return to a policy that was itself never disturbed by notice-and-comment rulemaking, or what such rulemaking would even look like.

In any event, Plaintiffs urge the court to apply a formality requirement that does not exist in the case law. Courts credit various "kinds of statements" made by agencies depending on the nature of the underlying challenged practice and the surrounding circumstances; they have not singled out as a requirement any particular level of formal process. *PETA*, 918 F.3d at 159. The D.C. Circuit has credited, for example, a statement in an agency affidavit that the agency would "not renew" the challenged policy, *Worth*, 451 F.3d at 861, and another court in this District

7

credited an internal policy change announced through email paired with a declaration by the agency that it intended to retain its new policy, *CREW*, 352 F. Supp. 3d at 6, 14.  Here, the Commission publicly announced its policy—including an explicit commitment not to revert to fully remote hearings—in a memorandum that was issued pursuant to the Chair's statutory authority and the Commission's Rules and Procedures.  The Commission has not maintained the legality of the challenged conduct, as might help overcome the presumption of regularity. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017); *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007).  Indeed, it has not even attempted a defense on the merits of providing only fully remote hearings in this action.  *See generally* Defs.' Mem. (making a merits argument only with respect to video witness testimony).  In sum, Plaintiffs have not met their burden of demonstrating that the voluntary-cessation exception to mootness applies to their claims.

### B.

That leaves as the only live controversy the issue of remote testimony from friendly witnesses.[2]  Plaintiffs' claims with respect to that issue are also moot, however, for a different reason.  Defendants argue that because "the Commission released both Spriggs and Davis, and therefore there is no pending revocation hearing for either of Plaintiffs," no relief remains that the court can grant, and the entire action is moot. Defs.' Mem. at 11.  Plaintiffs counter by invoking

---

[2] Plaintiffs suggest that their claims also cover the denial of in-person confrontation of adverse witnesses called by the Commission.  *See* Pls.' Opp'n at 18.  That is not, however, apparent from the Complaint.  It does not mention the denial of in-person confrontation as an impaired right, *cf.* Compl. ¶ 59 (only referencing Commission regulations concerning "attendance" of adverse witnesses but nowhere alleging a violation of an in-person confrontation right), and the prayer for relief only seeks to compel in-person attendance of "voluntary witnesses[] and favorable witnesses," *id.* ¶ 91.  In any event, Plaintiffs in their opposition say that raising a claim concerning the legality of allowing adverse witnesses to testify remotely would be "premature" because "[n]o hearing examiner has yet found good cause to excuse the attendance of adverse witnesses."  Pls.' Opp'n at 18.  Whatever Plaintiffs' reason, the court does not consider the alleged impairment of the right to in-person confrontation to be before the court.

the "inherently transitory" exception to the general rule that, if named plaintiffs in an uncertified class no longer have live claims, the entire action is moot. Pls.' Opp'n at 2; *see Bd. of Sch. Com'rs v. Jacobs*, 420 U.S. 128, 129 (1975). Under that exception, "where a named plaintiff's claim is inherently transitory, and becomes moot prior to certification, a motion for certification may relate back to the filing of the complaint," such that claims of the class are not rendered moot by the extinction of the named plaintiff's claims. *J.D. v. Azar*, 925 F.3d 1291, 1309 (D.C. Cir. 2019) (alteration and internal quotation marks omitted). In evaluating whether the exception applies, courts must determine first "whether the individual claim might end before the district court has a reasonable amount of time to decide class certification," and second "whether some class members will retain a live claim at every stage of litigation." *Id.* at 1311. "An affirmative answer to both questions ordinarily will suffice to trigger relation back." *Id.*

Here, the first *J.D.* factor is not genuinely in dispute. The Supreme Court has consistently applied the exception to class actions challenging detention procedures, where "the length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time," and so "[i]t is by no means certain that any given individual, named as a plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *see also Nielsen v. Preap*, 139 S. Ct. 954, 963 (2019) (plurality decision); *County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978). The D.C. Circuit has applied the exception in a similar context. *J.D.*, 925 F.3d at 1311. The salient features of *Gerstein* and its progeny are present here: as Plaintiffs note, they are "essentially in 'pretrial custody,' awaiting the hearing to which they are entitled," and "individual claims of detained releasees can expire at any time through release on recognizance, dismissal of charges, or a negotiated plea." Pls.' Opp'n at 6. Notably, Defendants do not contest the application

of the first *J.D.* prong.  Defs.' Reply in Supp. of Defs.' Mot., ECF No. 19 [hereinafter Defs.' Reply], at 2 (assuming that the first *J.D.* requirement is met).

The second *J.D.* factor is, however, very much in dispute.  Defendants assert that "there is no assurance that the members of the proposed class will retain a live claim throughout the proceedings" because the class as defined "includes individuals who do not seek the relief requested," and because "the claims of a large number of individuals in the proposed class have been mooted since the filing of this lawsuit due to their release from custody."  Defs.' Reply at 1–2.  As a result, Defendants assert, "it is unclear whether *any* individuals remain who have been incarcerated on a Commission warrant for over 65 days and also desire an immediate hearing with in-person witness testimony."  *Id.* at 2.  Plaintiffs' response is that "[t]he Commission does not dispute that there are currently releasees who are detained beyond . . . the 65-day requirement without a hearing," and that "as in *Gerstein*, class counsel is an institutional public defender who represents proposed class members in their individual cases."  Pls.' Opp'n at 6.

But Plaintiffs—who bear the burden of showing the exception applies—must show more than the existence of individuals who have been detained more than 65 days without a hearing.  They must demonstrate that there are individuals within their proposed class definition *with ongoing live claims*.  The fact that class counsel is an institutional public defender alone does not satisfy that imperative in light of the D.C. Circuit's instruction that "the record must *sufficiently assure* [the court] that some class members will retain a live claim throughout the proceedings." *J.D.*, 925 F.3d at 1310 (emphasis added).  The record here offers no such assurance for multiple reasons.

First, Plaintiffs have made no allegations, nor provided any evidence, regarding any putative class member other than the named Plaintiffs or how many members might be in their

10

proposed class. *Cf. id.* at 1303 (noting as evidence that, "[e]ach year, [the agency] has several hundred pregnant unaccompanied minors in its custody"). The court therefore is asked to presume that other class members exist, which it cannot do, even at the motion-to-dismiss stage. Second, the proposed class appears frozen in time as of the date suit was filed: it is defined as "all District of Columbia code offenders on parole or supervised release who have not received a local revocation hearing within 65 days of having been retaken on a warrant issued by the Parole Commission." Compl. ¶ 62. Unlike the class in *J.D.*, which was defined as "pregnant [unaccompanied alien children] who are *or will be* in the legal custody of the federal government," 925 F.3d at 1305 (emphasis added), the class proposed by Plaintiffs does not contemplate the entry of future members. If it did, that would increase the likelihood of a constant presence of some class members whose individual claims are not moot. *Cf. id.* at 1322 (discussing the relevance of the inclusion of future members to the Federal Rule of Civil Procedure Rule 23(a) numerosity analysis). Third, following the filing of this suit, the Commission released dozens of individuals through various COVID-related programs. *See* Defs.' Mot., Decl. of Stephen J. Husk, ECF No. 16-2 [hereinafter Husk Decl.], ¶¶ 16, 26, 29, 33. Thus, it is unclear whether any putative class member continues to be detained. Fourth, to the extent that individuals remain in custody who have not yet received a hearing after 65 days, Plaintiffs have not demonstrated that such individuals in fact desire an immediate hearing but are being denied one. As the Commission points out, many who are arrested and detained on a Commission warrant are in that position because they have incurred new criminal charges but were not judicially detained pretrial. *See* Defs.' Reply at 2; Husk Decl. ¶ 8. Many of those individuals voluntarily elect to have their violation "trail" the new criminal charge, which invariably delays such a hearing by more than 65 days. Husk Decl. ¶ 8. Persons in that position would not properly be considered part of the class. Finally, it is not clear

that anyone who might otherwise qualify as a class member wishes to present friendly witnesses in person—the sole live contested issue. Only such a person could pursue a claim through the class mechanism.

As a result of these infirmities, the court cannot say, even applying the plausibility standard at this stage, that it is "sufficiently assure[d]," *J.D.*, 925 F.3d at 1310, that class members with live claims will remain throughout the course of the litigation.

## IV.

For the foregoing reasons, the court grants Defendants' motion to dismiss without prejudice. Plaintiffs may refile their Complaint, identifying plaintiffs with live claims and providing assurance to the court that there will be class members with live claims throughout the course of the action. Any such amended complaint shall be filed by December 24, 2021.

Dated: December 3, 2021

Amit P. Mehta
United States District Court Judge